IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES LEE MACK, JR. #167429,
a/k/a JAMES LEE MAJORS                                         PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:14cv415-LRA

SHERIFF TYRONE LEWIS AND
DEPUTY THOMAS KNIGHT                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Sheriff Lewis and Deputy Thomas Knight's Motion for Summary Judgment and Motion to Strike. Plaintiff James Lee Mack, Jr. filed this action pursuant to 42 U.S.C. § 1983 alleging that Sheriff Lewis and Deputy Knight violated his constitutional rights by failing to protect him from an attack by other inmates while he was housed in the Hinds County Detention Center [HCDC] on August 15, 2013.[1] Having considered the motion and the competent summary judgment evidence, the Court concludes that the motion should be granted. A judgment at law shall be entered in favor of both Defendants Lewis and Knight, and this case shall be dismissed with prejudice.

---

[1] Plaintiff also sued "Deputy Smith" but could not identify him by his first name and he was never served with process. Plaintiff could not give a further identification other than the dates and times that Deputy Smith worked. After directed to do so by the Court, defense counsel made a reasonable search and inquiry to determine Deputy Smith's identity and then confirmed that Deputy Smith may be Christopher D. Smith [52]. Process was never issued and served on Christopher D. Smith, as Plaintiff did not request it. The Hinds County Board of Supervisors was also named as a defendant, but it was dismissed by this Court by Order entered August 24, 2015 [53].

**Facts**

According to Mack's testimony at the omnibus hearing, on August 15, 2013, he was housed in the HCDC. He had been convicted of capital murder and was temporarily housed at the HCDC in order to attend a hearing on his direct appeal. About 5:00 p.m. on that afternoon, he and other inmates were out for recreation. He and inmate Matthew Shelby got into an altercation. Specifically, Shelby had a knife in his hand and tried to grab Mack. Mack threw up his arm to defend himself, and he was not stabbed. He then just went back to his cell.

According to Mack, Deputy Knight came to his cell door and asked what was going on. Mack just said "me and a guy down there got into it." [57-1, p. 7]. Mack testified that he did not give the deputy much detail because he "knew the officer was kind of bias against me...." The inmates had homemade knives in the zone that night and went from cell to cell sharpening their knives by putting them in the key hold mechanisms on the cell doors. When Deputy Knight left his shift at about 10:00 p.m., he had left some of the inmates' doors open.

The next deputy came on the unit at 10:00 pm., Deputy Smith, the unserved Defendant. Mack testified that he told Deputy Smith that he feared for his life because his keyhole mechanism was not closed, and he believed the other inmates (that he had an altercation with) would try to get inside his cell. Deputy Smith then left, and never came back to the zone. Mack started kicking his cell door to get officers' attention, but nobody came. About twelve inmates then popped his cell door open, came in and beat him up.

Mack suffered from a cut to his eye, a black eye, and bruises, He testified that he still has migraine headaches from the incident.

Mack testified that Sheriff Lewis was not at the jail at the time and had no knowledge that he was about to be beaten up. Yet, Mack concludes that the Sheriff was aware of the lock mechanism not working, and he did not do whatever he could to make sure the locks worked properly to prevent attacks such as his.

Mack testified that Deputy Knight was "aware that they was on the zone making the instruments." [57-1, p. 11]. Yet, Knight did not report this to his work supervisor while he was at work, according to Mack. Mack also testified that Knight intentionally left several of the gangbangers' doors open, including inmate Marcus Dent's. Mack testified that he knew this because when the officers leave work, they go around and check all the doors to make sure they are locked. Because Dent's door was not locked, Mack assumes Deputy Knight left it open. [57-1, p. 13]. He has no evidence of this other than his assumptions.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure sets forth the requirements for summary judgment. Rule 56, in relevant part, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine if there is a genuine issue of material fact, the

Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The United States Supreme Court has held that entry of summary judgment is appropriate only "after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The plaintiff's burden of proof is established by the elements of the substantive law, and only facts relevant to those elements will be considered for summary judgment.  *Id.* at 322.

## Legal Analysis

### I.  Individual Capacity Claims

Mack sued Defendant Sheriff Lewis and Deputy Knight in their individual capacities, and they assert they are entitled to qualified immunity.  Qualified immunity promotes the necessary, effective, and efficient performance of government duties, *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982), by shielding from suit all but the "plainly incompetent or those who knowingly violated the law," *Malley v. Briggs*, 457 U.S. 335, 341 (1986);  *Pearson v. Callahan*, 555 U.S. 223 (2009);  *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).  When a defendant asserts this defense, the plaintiff has the burden of proving that it is inapplicable.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*,

4

480 F.3d 358, 363 (5th Cir. 2007); *Atteberry v. Nocona General Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert denied*, 134 S.Ct. 1035 (2014) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."). To overcome the immunity, a plaintiff must show that there has been a violation of a clearly established federal constitutional or statutory right and that the official's actions violated that right to the extent that an objectively reasonable person would have known. *Malley,* 457 U.S. at 341.

A two-part analysis is applied in assessing a claim of qualified immunity. First, the Court must determine whether Mack's allegations even establish a constitutional violation. *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). "If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194 (2001). If a violation is made out, then the Court must determine whether the right was "clearly established.

    A.    **<u>Defendant Sheriff Tyrone Lewis</u>**

Mack does not dispute Defendants' assertion that Defendant Sheriff Lewis had no personal involvement whatsoever in the events which led Mack to be harmed. Lewis was not present in the facility on August 15, 2013, and there is no showing that he was even aware that Mack was incarcerated at HCDC at the time. Mack's theory of liability is simply that Sheriff Lewis knew about the lock mechanisms not working and that he did not do his best to get them fixed. When asked why he sued Sheriff Lewis, Mack testified:

> **MACK**: Prior to this, it was like a riot at the facility, and it was couple of escapes at that facility. So he was aware of the lock mechanism not working. He didn't do whatever was in his best power to make sure that the lock mechanism was working in the doors to prevent that from happening.

[57-1, p. 10].

In response to the Motion for Summary Judgment, Mack attached a May 21, 2015, "findings" letter from the United States Department of Justice – Civil Rights Division regarding its investigation of the Hinds County Adult Detention Center [59-1]. The letter contains allegations regarding the conditions at HCDC at the on-site inspections conducted on September 9-11, 2014, and January 27-20, 2015. Defendants filed a Motion to Strike [60] the letter, asserting that it is not competent summary judgment evidence under Fed. R. Civ. P. 56(c)(2). They contend that it constitutes inadmissible hearsay and that it post-dates the August 15, 2013 events that form the basis of Plaintiff's claims. Defendants also urge that it would be inadmissible under Fed. R. Evid. 403 because its probative value is substantially outweighed by its tendency to mislead and prejudice the trier of fact.

6

Defendants cite the case of *Williams v. Gusman*, No. CIV. A. 15-64, 2015 WL 4509762, at *4 (E.D. La. July 24, 2015), in support of their request that the letter be stricken.  In that case, an inmate housed at the Orleans Parish Prison [OPP] died because he was not provided prompt medical care after an attack by other inmates.  The court held that the Sheriff was entitled to qualified immunity, even though the court was "well aware of the history of deficient medical and mental health care at OPP, as well as the continued persistence of issues related to such deficiencies."  *Id.*  The prison was subject to a Consent Judgment.  In response to the motion claiming immunity, the plaintiffs offered two letters from the U.S. Department of Justice [DOJ] to the Sheriff and three reports by the Monitor.  The court rejected the evidence, finding that plaintiffs had not explained how either the letters or the reports would be admissible at any trial.  The court concluded that plaintiffs had not produced evidence raising a genuine issue of material fact regarding a pattern or policy of similar constitutional violations at OPP.

Likewise, Mack has not shown that the DOJ letter would be admissible evidence at trial.  It is noteworthy that the investigations referenced in the letter are not for the same time period as when Plaintiff was housed at HCDC.  In any case, the Court finds it unnecessary to determine whether the DOJ letter would be admissible at trial, and the Motion to Strike shall be dismissed as moot.  The DOJ letter would not defeat a finding in favor of Defendants, as Plaintiff has failed to overcome their defense of qualified immunity even considering the DOJ letter.

This Court finds that no individual liability could be established against Sheriff Lewis by this Plaintiff, as he simply was not directly involved in failing to protect Mack. There is no liability under section 1983 under a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a "supervisory liability" or *respondeat superior* theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), citing *Monell,* 436 U.S. at 691. Each government-official defendant, through the official's own individual actions, must have violated the Constitution; they are not held accountable for the misdeeds of their agents. *Id*. Absent vicarious liability, each Government official is liable for his or her own misconduct. *Id.*

Fifth Circuit precedent requires either personal involvement by an individual Defendant in the alleged violation, or the enforcement of some policy or practice resulting in the constitutional deprivation. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (emphasis added); *Coleman v. Houston Indep. Sch. District,* 113 F.3d 528, 534 (5th Cir. 1997). To maintain this § 1983 action, Mack must show that Defendant Lewis was personally involved in the actions he complains of, or was responsible for the policy or custom giving rise to the constitutional deprivation. Mack only makes vague allegations that the Sheriff "should have" done something and that he did not "do his best" to get the doors to the cells fixed.   This is insufficient under the circumstances of this case.

To allow an individual prisoner to be able to use the DOJ letter and vague allegations against the Sheriff, to obtain monetary damages for an assault by other prisoners from the Sheriff, individually, is not allowed under § 1983 law. This would be more akin to strict and vicarious liability, as the Court in *Williams* stated. 2015 WL 4509762, at *4. The Sheriff is not required to rebuild a jail, or its doors, with his own funds. And he cannot be strictly or vicariously liable to a prisoner unless he was directly involved in the alleged failure to protect and had subjective knowledge of a constitutional violation.

The motion shall be granted as to Sheriff Lewis in his individual capacity.

### B. **Defendant Deputy Thomas Knight**

Defendant Knight also has asserted the defense of qualified immunity. The Court must determine whether or not Plaintiff has alleged the violation of a clearly established constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). Prison officials have a duty to protect prisoners from violence at the hands of other inmates, and this duty is derived from the prohibition of cruel and unusual punishments in the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994); *Longoria v. Texas,* 473 F.3d 586, 592 (5th Cir. 2006); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002); *Horton v. Cockrell,* 70 F.3d 397, 400-01 (1995). That right is clearly established under the law. However, as the Court in *Farmer* stated, "[n]ot every injury by one prisoner at the hands of another

translates into constitutional liability for prison officials responsible for the victim's safety." 511 U.S. at 834.

To establish a failure-to-protect claim under section 1983, Plaintiff must show that he is/was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). Further, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Id.* (quoting *Farmer*). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

It is necessary for both requirements to be met before the Eighth Amendment is violated: (1) the deprivation alleged must be, objectively, 'sufficiently serious,' so the inmate must show that he is incarcerated under "conditions posing a substantial risk of serious harm" and, (2) "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Williams v. Hampton,* 797 F.3d 276, 280 (5th Cir. 2015) (quoting *Farmer*. 511 U.S. at 834, quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A prison official must have a "sufficiently culpable state of mind" so as to be one of deliberate indifference to the inmate's health or safety. *Id.*

The standard to be used in Eighth Amendment cases is one of *subjective* deliberate indifference, as used in criminal law, not an objective standard as used in civil law. *Williams*, 797 F.3d at 281 (citations omitted). The Eighth Amendment does not outlaw cruel and inhuman "conditions"; it outlaws cruel and inhuman "punishments." *Id.* Accordingly, the prison official must be actually reckless, disregarding a risk of harm of which he is actually aware. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id., citing Farmer,* 511 U.S. at 838.

In this case, Mack's allegations regarding Deputy Knight's actions or inactions fall far short of establishing the required subjective deliberate indifference. Plaintiff must allege facts that would show Deputy Knight's actions not only were objectively unreasonable, but that he intended the consequence of Mack being attacked by other inmates. At the omnibus hearing, Plaintiff testified regarding Deputy Knight's actions:

> MACK: When I went back to my cell, the officer come to my door asked me what was going on. I was like, Me and a guy down there got into it. I ain't gone into too much detail because I kind of knew that the officer was kind of bias against me because he was watching what was going on on the zone, but he still didn't do anything about it. So he just stood there and like – it was like early in the day. I believe it had to be like 5:00 when the altercation first started. But from that time all the way up until about like 8:00 or 9:00, they was out on the zone just making knives on the zone. They was going from cell to cell to sharpen up the knives. Like the key hold mechanism that to get inside the door, it is like a small hole and you can like make a makeshift thing and open somebody's door with it. And so when he left, when that deputy left at 10:00, he had left some of the people I had gotten into it with, he had left their doors open.
>
> THE COURT: Which deputy was that?

    MACK: That was Deputy Knight.

[57-1, pp. 7-8.]

  Plaintiff also testified that he knew Deputy Knight knew that the other inmates were "on the zone making the instruments.  He didn't report it to his work supervisor or anybody...."[57-1, p. 11].  Plaintiff's only "proof" of this was his contention that Knight was the officer who had to sit on the zone all day and monitor the zone; ergo, he had to have seen the prisoners doing this.

  Plaintiff admitted that he did not tell Deputy Knight details about his earlier altercation with Matthew Shelby, even though Knight asked him about it.  He did not inform Knight that he feared what might happen later, or that he was afraid for his safety.  Plaintiff simply concludes that Knight was biased against him and knew "what was going on on the zone."  Yet he provides absolutely no evidence of this except his unsupported conclusory allegations.

  Plaintiff also concludes that Deputy Knight intentionally left the other prisoners' doors open in order for them to be able to assault him.  Again, he provides no evidence of this allegation.  Plaintiff asks the Court to presume that because the doors were left open when Deputy Knight left work that night, Deputy Knight knew they were open and intended for Plaintiff to be assaulted.  This bare assertion is not competent evidence to prove any knowledge or intent of harm on Deputy Knight's part.

  All of these allegations by Plaintiff are insufficient as a matter of law to show that Deputy Knight was subjectively aware that Plaintiff was at risk of serious harm, or that he

intended for Plaintiff to be assaulted. Mack was beaten by other prisoners, not by Deputy Knight. There is no evidence that Knight had any knowledge whatsoever of the threat to Mack, and the motion shall be granted.

## II. Official Capacity Claims

It is unclear as to whether or not Mack has made an official capacity claim against either Defendant, but any such claim would be against the County. *Bennet v. Pippin,* 74 F.3d 578, 584 (5th Cir. 1996). Under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), local governments may be liable for damages whenever the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers. The local government may also be sued for constitutional deprivations visited pursuant to a governmental "custom" even though such a custom has not received formal approval. *Id.* at 690-91.

In order for the County to be liable, Mack must establish that: (1) a policy or custom existed; (2) that the governmental policy maker actually or constructively knew of the existence of the policy or custom; (3) that a constitutional violation occurred; and (4) that the policy or custom served as the "moving force" behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532-33 (5th Cir. 1996).

Mack has failed to establish that his assault was due to a "policy or custom." At one point, he blames a failure of the lock mechanisms and the doors for his assault and concludes that Sheriff Lewis knew about the problems and failed to do anything. Yet, he

13

also claims that Deputy Knight intentionally left the doors open on the night of the assault. He has failed to show that the County had a policy or custom of leaving the cell doors open in order for inmates to be injured. At most, Mack may have articulated a claim of negligence on Knight's part and on the Sheriff's part. Simple negligence on the part of a prison official has never been sufficient to establish a basis for a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 414 U.S. 344 (1986).

Because no constitutional violation is established under the circumstances described by Mack, he cannot establish § 1983 liability against either Sheriff Lewis or Deputy Knight, individually or in his official capacity, or Hinds County. The four-part test cannot be met.

The Court's findings are based primarily on Mack's own sworn testimony, as set forth in the transcript [59-1]. Therefore, it is hereby ordered that Defendants' motion [57] is granted as to all of Mack's claims, and Defendants Lewis and Knight are hereby dismissed with prejudice. Because Deputy Smith has not been served, the Complaint shall be dismissed as to him without prejudice, Defendants' Motion to Strike [60] is dismissed as moot.

Final Judgment shall be entered.

SO ORDERED, this the 29th day of September 2016.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE